CASE NO. 25-3552

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**MICHAEL JAMES,**

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

_____

**BRIEF OF APPELLANT MICHAEL JAMES**

_____

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

LORI BETH RIGA
Ohio Bar: 0066994
Office of the Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856
lori_riga@fd.org

*Counsel for Defendant-Appellant Michael James*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Statement Regarding Oral Argument ...................................................................... iii

Jurisdictional Statement ............................................................................................1

Issues Presented for Review ......................................................................................2

Statement of the Case and Facts ...............................................................................3

Summary of Argument .............................................................................................18

Argument..................................................................................................................19

I.      The district court abused its discretion when it denied Mr. James's
Motion to Suppress ........................................................................................19

      A.     Standard of Review ..............................................................................19

      B.     Michael James's Fourth Amendment waiver was restricted to a
search of the Whisper application on his cellular phone ....................20

      C.     Agent Johnston and Officer Jarvis conducted a custodial
interrogation of Michael James in his home, requiring them to
provide Mr. James with the warnings under *Miranda v. Arizona* ......25

Conclusion ...............................................................................................................30

Certificate of Service and Conformity....................................................................31

Designation of District Court Documents ...............................................................32

## TABLE OF AUTHORITIES

**Cases**

*Feagin v. Mansfield Police Dept.*, 115 F.4th 595 (6th Cir. 2025)...........................19

*Florida v. Jimeno*, 500 U.S. 248 (1991) ...........................................................18, 20

*Illinois v. Perkins*, 496 U.S. 292 (1990) .................................................................26

*Miranda v. Arizona*, 384 U.S. 436 (1966) ......................................................*passim*

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................19

*Stansbury v. California*, 511 U.S. 318 (1994) ........................................................26

*Thompson v. Keohane*, 516 U.S. 99 (1995)........................................................26, 28

*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008).....................................27

*United States v. Garcia*, 496 F.3d 495 (6th Cir. 2007)............................................19

*United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2010) ...................................15, 27

*United States v. Keith*, 559 F.3d 499 (6th Cir. 2009) ..............................................19

*United States v. Lewis*, 81 F.4th 640 (6th Cir. 2023)............................15, 18, 20, 21

*United States v. Panak*, 552 F.3d 462 (6th Cir. 2009)....................................*passim*

*United States v. Sittenfeld*, 128 F.4th 752 (6th Cir. 2025)......................................19

**Statutes**

18 U.S.C. § 2252(a)(2)................................................................................................7

18 U.S.C. § 2252(b)(1)...............................................................................................7

18 U.S.C. § 2252A(a)(5)(B) ......................................................................................7

18 U.S.C. § 3231 ..............................................................................................1

18 U.S.C. § 3742 ..............................................................................................1

28 U.S.C. § 1291 ..............................................................................................1

## U.S. Constitution

U.S. CONST. AMEND. IV...............................................................................*passim*

U.S. CONST. AMEND. V ...............................................................................*passim*

## Rules

FED. R. APP. P. 34.........................................................................................iv

6TH CIR. R. 34.............................................................................................iv

## STATEMENT REGARDING ORAL ARGUMENT

Under Sixth Circuit Rule 34(a) and Federal Rule of Appellate Procedure 34(a)(1), Appellant Michael James requests oral argument. Law enforcement violated Mr. James's Fourth Amendment right against unreasonable searches and seizures when they unlawfully searched his cellular phone beyond the scope of his consent. Law enforcement violated Mr. James's Fifth Amendment right against self-incrimination when they conducted a custodial interrogation in his home without providing him with warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). Because a de novo standard applies, and because of the constitutional questions at issue, the Court should hold oral argument.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Ohio had original jurisdiction under 18 U.S.C. § 3231, which gives district courts original and exclusive jurisdiction over federal crimes. On March 31, 2025, Mr. James entered a guilty plea before the district court. [R. 47: COP Hrg. Tr., PageID 547-600].

The district court sentenced him on July 21, 2025. [R. 48: Sentencing Hrg. Tr., Page ID 601-642]. Mr. James thereafter filed a timely notice of appeal. [R. 41: NOA, PageID 550]. This Court has jurisdiction over Mr. James's appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## <u>ISSUES PRESENTED FOR REVIEW</u>

I.   **Did the district court err when it denied a motion to suppress, finding that the scope of law enforcement's search of Mr. James's cellular phone did not exceed the scope of his consent without considering the entire conversation?**

II.  **A district court must suppress all evidence obtained in violation of a defendant's Fifth Amendment right against self-incrimination. Did the district court abuse its discretion when it denied Mr. James's motion to suppress statements he made during a custodial interrogation in his home where police failed to provide Mr. James with warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966)?**

## <u>STATEMENT OF THE CASE AND FACTS</u>

**I.     Law enforcement interrogate Mr. James without advising him of his
*Miranda* rights.**

Michael James was home alone sitting in his yard on July 1, 2024, when
Special Agent Austin Johnston and Task Force Officer Katherine Jarvis drove up to
his house. [R. 28: MTS Evidentiary Hrg. Tr., PageID 160]. After initiating a
discussion with Michael for over ten minutes, the agents decide to audio record their
conversation. [James Interrogation Audio Rec., App. A].[1] When the recording
switches on, Officer Jarvis discusses Michael's mental health medications with him.
Michael is heard speaking about something that occurred between himself and some
coworkers that he does not remember because of the medications he was taking. [Id.
at Min. :12]. Michael states that he did not "remember going home sometimes" so
he ceased taking all medications. [Id. at Min. :22]. Michael and the agents then enter
his home.

Upon entry, the phone begins to ring and announces a call from Michael's
father. The agents inquire whether Michael lives with his parents. Michael responds
affirmatively and informs the agents his father is trying to call him now. [Id. at Min.
1:33]. It is clear at this point that Michael's parents have been alerted to law

---

[1] This audio recording was played throughout the district court's suppression
hearing and was entered into the record via manual filing. *See* [R. 20: Notice of
Manual Filing, PageID 117].

enforcement presence in their home as they can be heard trying to call him throughout the interrogation. When Michael's mother again tries to call and Michael begins to text her in response, Agent Johnston states, "not to be intrusive or anything, but while you do that is it okay if Katie [Officer Jarvis] makes sure you're not doing anything on your phone you shouldn't be?" [James Interrogation Audio Rec., App. A, Min. 2:27]. Michael hesitates then responds, "yeah, well," [Id. at Min. 2:36].

As Michael hands over his phone, the law enforcement officers see that he is overwhelmed by their presence. They attempt to reassure him. As one tells him to "take a deep breath," another observes, "I know you're a little nervous." [Id. at Min. 2:42]. To further assuage Michael's fears, Officer Johnston states, "if we weren't here just to have a conversation with you, we would have come in a different manner, if you know what I mean." [Id. at Min. 3:05].

Michael's parents began calling again. Agent Johnston acknowledges that his parents must be "concerned about" him. [Id. at Min. 3:56]. Against the backdrop of another parental call, law enforcement question Michael. When his mother calls yet again, Agent Johnston tells Michael to "answer your mom." [Id. at Min. 4:32]. Michael attempts to answer his mother's worried questions, but Agent Johnston takes the phone from Michael stating, "I'll talk to her." [Id. at Min. 4:45]. Agent Johnston states he has come to the house to question Michael about some "episodes, historically" Michael has had in the past. [Id. at Min. 5:24]. His mother asks for

clarification, inquiring "you mean like, suicidal?" to which Agent Johnston responds, "correct." [James Interrogation Audio Rec., App. A, Min. 5:22]. When Ms. James asks how the agents came to know of any information, Agent Johnston responds it came through one of their "tip lines." [Id. at Min. 6:06].

After Micheal pauses the interrogation briefly to speak to his mother, Agent Johnston resumes the conversation by stating, "We were talking about the Whisper app and we get the content of those messages." [Id. at Min. 6:58]. He asks Michael if he can peruse his Whisper app to confirm that Michael is being honest with them. Agent Johnston inquires whether Whisper is the only app containing conversations with minors: "So, if I am on your phone, is there any other applications that you used besides Whisper that, um, you engaged in the same conversations and/or anything else of that manner?" [Id. at Min. 10:56]. Michael replies, "No, no Whisper is the only app that I have." [Id. at Min. 11:08]. Michael then suggests he should delete the Whisper app, to which Agent Johnston responds, "I think that would solve a lot of problems." [Id. at Min. 11:38].

Agent Johnston then raises the subject of Michael signing a consent form to allow for law enforcement's search. After Michael describes the make and model of his phone, Agent Johnston informs him: "The only form I'm asking you to sign for me is the consent to search that. You say that we can go on there and purge the Whisper, you say that you didn't have anything else on it so, just to kind of gage

5

your truthfulness, I just want to see if you'd be okay if we went on there and you'd be okay if we went through that with you." [James Interrogation Audio Rec., App. A, Min. 12:08-12:25]. He further explains the rights Michael is waiving as: "You authorize us to get in there so we determine what may be related to the conversation investigation, does that make sense?" [Id. at Min. 12:58]. Michael asks Agent Johnston to clarify, "So only related to this investigation?" [Id. at Min. 13:05]. Michael thereafter signs the form.

When Agent Johnston begins searching a different area of the phone, Michael redirects him that, "Oh, the Whisper app is here." [Id. at Min. 13:51]. Michael says he has "no idea" about the conversations he has had on Whisper or his username to log into the account. [Id. at Min. 14:45]. Michael informs the agents he does not remember having the Whisper conversations because he was "not in my right mind." [Id. at Min. 15:39]. When Agent Johnston offers to show Michael some of the conversations he has had to refresh his memory, Michael states they will not assist him because most of the conversations he had was when he was "not in the right state of mind, depressed, angry." [Id. at Min. 18:43]. Agent Johnston assures Michael: "If you're going to be honest about it, you're not going to jail." [Id. at Min. 20:54]. Agent Johnston presses him further, telling Michael it is his "one" opportunity to be honest. [Id. at Min. 21:34]. Michael responds to questions but is audibly crying. He states, "I want to kill myself right now." [Id. at Min. 24:30].

6

Ms. James then walks into her home. [James Interrogation Audio Rec., App. A, Min. 25:38]. Michael tells his mom about his cell phone activity, where he has texted that he wants to hurt himself or others. Law enforcement officers stop the interrogation. As Michael sobs and describes texts he has written on his phone, Ms. James asks Michael, "Do you feel like you need help?" Michael responds, "To be honest, probably." [Id. at Min. 27:25]. The interrogation concludes, and Agent Johnston informs Michael they are confiscating his phone. [Id. at Min. 29:18]. At no point during the interrogation did either agent advise Michael of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.    The federal case before the district court

On September 19, 2024, the government filed a two-count Indictment charging Michael James with receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1), and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). [R. 9: Indictment, PageID 22-23]. Michael filed a Motion to Suppress on December 9, 2024. [R. 18: Motion to Suppress, PageID 100-108]. Michael alleged in the Motion that law enforcement should have provided him with warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), when they interrogated him in his home. In addition to asserting that this was a custodial interrogation, Michael also raised the issue of whether law enforcement should have

7

continued their questioning upon learning of Michael's mental instability. [R. 18: Motion to Suppress, PageID 105]. Because of these violations, Michael asserted that the district court should suppress the statements he made during the interrogation and the contents of his phone as "fruit of the poisonous tree." [Id. at PageID 106-107].

The government filed a brief opposing the Motion, alleging that the interrogation was not "custodial" and therefore did not warrant the officers' reading Michael his *Miranda* rights. [R. 24: Govt RIO, PageID 129-137]. Michael filed a reply brief, [R. 25: Reply to MTS, PageID 138-141], and the district court set an evidentiary hearing on the Motion for January 14, 2025. [R. 28: MTS Evidentiary Hrg. Tr., PageID 154-231].

### A.    Motion to Suppress Evidentiary Hearing

At the hearing, the government called Agent Austin Johnston to testify about the interrogation in Michael's home. Agent Johnston stated that both he and Officer Jarvis were wearing firearms on the day of the interrogation, but he believed they were not visible. [Id. at PageID 160]. When they arrived at Michael's home, they rang the Ring-style doorbell, which Michael's father answered. Michael's father alerted Michael of police presence at the door, and Michael walked outside to the door. Although their conversation began outside the home, Agent Johnston asked, "if he would like to go talk somewhere more private" and they went into Michael's

8

home. [R. 28: MTS Evidentiary Hrg. Tr., PageID 162]. It is only after they enter Michael's residence that Agent Johnston begins recording the conversation. [Id. at PageID 163]. Agent Johnston describes the unrecorded conversation, in which Michael states he was having mental health problems and was medicated for them, but because of the side effects of the medications, he ceased taking them. [Id at PageID 164]. At that point, the audio recording begins, and the prosecutor played it throughout the remainder of the evidentiary hearing.

After playing a portion of the audiotape, the prosecutor inquired about Michael's nervousness that Agent Johnston's observes on the audio recording. Agent Johnston explained that Michael showed several signs of "being nervous." [Id. at PageID 166]. During the hearing, Agent Johnston testified that "Michael was trying to delete the Whisper app," but fails to observe that on the audio recording he had encouraged Michael to do so. [Id. at PageID 168]. He noted that in the audio recording he asked Michael to sign a consent form. The prosecutor inquired about some noises that can be heard on the audio recording. Agent Johnston explains that, at that point, Michael began to cry. [Id. at PageID 169]. When defense counsel later asked if Michael was admitted to a mental health facility after the interrogation, Agent Johnston responded affirmatively. [Id. at PageID 199-200].

During cross-examination, Agent Johnston conceded that he never advised Michael of his *Miranda* rights. [Id. at PageID 177-78]. The Agent agreed with

9

defense counsel that he was required by law to inform an interviewee of these rights when "somebody may not believe that they're free not to talk to you." [R. 28: MTS Evidentiary Hrg. Tr., PageID 178]. Agent Johnston admitted that neither he nor Officer Jarvis informed Michael he was free to leave or walk away when they began interrogating him. [Id. at PageID 180]. When defense counsel asked why he and Officer Jarvis did not begin recording the interrogation until almost a third of it had transpired, Agent Johnston responded, "we forgot." [Id. at PageID 181].

Defense counsel also inquired whether the Whisper app was the main subject of the officers' conversation with Michael. Agent Johnston testified that it was only that application in which Michael had engaged in messages with what turned out to be an FBI agent. Defense counsel inquired about Agent Johnston's representation to Michael that if he would "purge all of this," then law enforcement would leave. [Id. at PageID 184]. Agent Johnston testified that his statements to Michael merely assured him that he would not get into trouble with the law "that day," even though he did not stress that qualification in the audio recording. [Id. at PageID 184] ("I was giving him the impression that he wasn't going to jail *that day*") (emphasis supplied). He admitted to defense counsel that he left Michael with the impression that, if he deleted the Whisper app and was "honest" with the officers, then things would resolve more favorably for Michael and, if he was not, then something less favorable would occur. [Id. at PageID 185]. Agent Johnston affirmed during his testimony that

10

he responded to Michael's comment, "I want don't to be in trouble," by stating, "I'm trying to make it so you're not in trouble." [R. 28: MTS Evidentiary Hrg. Tr., PageID 195].

Defense counsel also inquired about the numerous phone calls from Michael's parents during the interrogation. Agent Johnston admitted his concern that, if Michael answered his father's calls, his father would instruct Michael not to cooperate with law enforcement. [Id. at PageID 187]. Agent Johnston conceded that his conversations with Michael were directed towards the Whisper app, and that it was during discussions about that app that he asked Michael to sign a consent form to search his phone. [Id. at PageID 189]. Agent Johnston further admitted that the discussions about the consent to search were related entirely to "the Whisper app, et cetera" and that he did not make it clear that the officers would seize his phone once the interrogation ended. [Id. at PageID 193].

During closing argument, defense counsel first argued that Michael believed based on the officers' representations that, if he did not cooperate with them, he would be arrested. [Id. at PageID 205-06]. Defense counsel also observed that Michael stated throughout the interrogation that he did not want to be arrested, indicating that he believed he was in custody. Defense counsel noted the different responses law enforcement had between calls from Michael's mother versus his

11

father. While law enforcement instructed Michael to answer his mother's calls, they did no such thing when his father called.

Defense counsel also observed that, despite law enforcement's possession of Michael's conversations on the Whisper app before they visited his home, law enforcement never procured a warrant to search Michael's phone. They instead had to rely on his consent to search the phone. [R. 28: MTS Evidentiary Hrg. Tr., PageID 208]. Defense counsel noted that, as Agent Johnston and Michael looked at his phone together, they were searching specifically for the Whisper app. [Id. at PageID 209]. From these statements, defense counsel argued that Michael reasonably believed that once he and law enforcement deleted the Whisper app, nothing further would occur. [Id.] He underscored the misleading nature of Agent Johnston's conversation with Michael that, so long as he was honest with them, he would not be arrested. Defense counsel also noted Michael's inexperience with law enforcement as he had no criminal record. The defense further argued that Michael's belief that he would not be arrested only if he cooperated with law enforcement was proof that Michael did not believe he was free to walk away because it was conditioned on his responses. [R. 28: MTS Evidentiary Hrg. Tr., PageID 210].

Defense counsel thereafter argued that Michael had not knowingly consented to the search of his entire phone, but only to a search of the Whisper app that was the subject of their discussion. He noted Michael's statement on the audio recording

where he pointed Agent Johnston to the Whisper app as the only area of his phone that was "related to this investigation." [R. 28: MTS Evidentiary Hrg. Tr., PageID 210-11]. Defense counsel argued that Michael's consent to search the entire phone was not knowing and voluntary. [Id. at PageID 212]. Because this argument was not in defense counsel's Motion to Suppress but arose during the evidentiary hearing, the district court allowed both parties additional briefing on the issue of the extent of Michael's consent to search the phone. [Id. at PageID 218].

The government moved for, and the district court admitted into evidence the audio recording of the interrogation. [R. 28: MTS Hrg. Tr., PageID 204].

## B.    The scope of consent briefing and district court ruling

On January 27, 2025, the government filed its brief on the scope of consent issue raised during the Motion to Suppress evidentiary hearing. [R. 29: Govt Post-Hrg. Br., PageID 232-36]. The government argued that the consent form stated the consent was for "a complete search" of Michael's cellular phone. [Id. at PageID 234]. Michael filed a responsive brief on February 3, 2025. [R. 30: Defense Post-Hrg. Br., PageID 237-242]. Therein, the defense emphasized that Michael was not a sophisticated criminal who understood his constitutional rights or police tactics. Counsel noted that, based on the audio recording, the agents were aware that Michael had no previous legal troubles. [Id. at PageID 241] (citing James Interrogation Audio Rec., App. A, Min. 3:17). Defense counsel further argued that all interrogation

13

questions leading up to Agent Johnston's request that Michael sign the waiver form had been about the "conversation investigation." Michael had informed officers that Whisper was the only app on which the illicit conversations took place, and redirected Agent Johnston's search of the phone to the Whisper app when Agent Johnston apparently searched other areas of the phone. [R. 30: Defense Post-Hrg. Br., PageID 241] (citing James Interrogation Audio Rec., App. A, Min. 11:08) ("No, no Whisper is the only app that I have.").

The post-hearing brief further observed that Agent Johnston's explanation of the scope of the waiver also centers around the "conversation investigation," informing Michael that was the only reason he wanted to search his phone. [Id.] When Michael asked for clarification, Agent Johnston agrees it is only related to the "conversation investigation." [Id.] Based on this dialogue surrounding the waiver, the defense asserted, Michael understood that he was consenting only to law enforcement's review of the Whisper app on his phone. Because law enforcement later conducted a full forensic search of Michael's phone without a warrant, defense counsel asserted their search exceeded Michael's waiver of his Fourth Amendment rights and the search results should be suppressed. [Id. at PageID 242]. The district court set a hearing on the scope of the waiver issue for February 13, 2025. [Non-Doc. Order Entry, 2-6-2025].

14

At the second hearing, the district court ruled on the Motion to Suppress. Citing this Court's opinion in *United States v. Lewis*, 81 F.4th 640 (6th Cir. 2023), the district court first observed that the defendant bears the burden of proving a Fourth Amendment violation. [R. 46: Suppression Hrg. Tr., PageID 558]. It observed that, under *United States v. Panak*, 552 F.3d 462 (6th Cir. 2009), a district court makes findings regarding the custodial nature of a police interrogation after reviewing four factors: "The location of the interview; the length and manner of questioning; any restraint on limitation [sic]; and whether there are any statements made about the person's -- in this case Mr. James's -- ability to decline to answer questions or conclude the interview." [Id. at PageID 558].

The district court noted that an individual's residence can be custodial under this Court's decision in *United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2010). It observed four additional factors to review when law enforcement conduct an interview in an individual's home: "[t]he number of officers present; any show of authority; displaying or drawing of weapons; or the nature of the question." [Id. at PageID 559]. Based on these factors, the district court made the following findings: (1) there were two officers present; (2) there was minimal show of authority because officers were wearing street clothes; (3) officers had no visible handcuffs or weapons; and (4) that the parties "all agreed to go someplace else," *i.e.*, Michael's home. [Id. at PageID 560]. The district court further found that once inside, the

15

agents did not intrude on Micheal's personal space. The district court judge noted that Michael "sounds confident" when he speaks with his mother and that he "instruct[ed] officers on how to speak with his mother, as evidence that Michael was comfortable in these circumstances. [R. 46: Suppression Hrg. Tr., PageID 560-61]. The district court gleaned from the sound of Michael's voice that "he does not sound intimidated" despite Agent Johnston's evidentiary testimony that Michael was "nervous" and "crying" [Id. at PageID 561-62]. The district court dismissed signs of Michael's impaired mental health as a non-starter, finding that Michael was not suffering from any mental condition that would prevent him from understanding the interrogation or providing his consent to search the phone. [Id. at PageID 566].

The district court further found that Agent Johnston told Michael he would not be arrested nor was he going to jail and that there was no limitation on his movement. Finally, the district court noted this Court's guidance in *Panak*, that officers explain to an interviewee that he is free to leave, but stated, "this is not a requirement." [Id. at PageID 562]. The district court therefore concluded that the interrogation was non-custodial. [Id. at PageID 563].

Moving to the consent issue, the district court observed that during the interrogation there was discussion about other apps aside from the Whisper app. The district court observed Agent Johnston stated, the "Whisper app et cetera" during the discussion surrounding the search. While the district court acknowledged that

16

Michael asked, "for clarification that it's only related to this [investigation], and he is told that it is" yet the district court nonetheless found that Michael consented to the search of his entire phone. [R. 46: Suppression Hrg. Tr., PageID 567]. The court found most noteworthy Agent Johnston's question, "If we go through your phone, is there anything else we should know about ahead of time," as dispositive that Michael consented to the search of the entire phone. [Id. at PageID 568]. She further observed that the interrogation "mentions" other apps and that Michael did not "retract permission to use the phone or to search the phone" as evidence that he understood the scope of his consent when he signed the form. [Id.] The court also found that the contents of the form stated that the phone itself was to be searched and that Michael signed the form which stated in boilerplate that he understood he had the right to refuse permission of the search. [Id. at PageID 569]. The district court then denied the Motion to Suppress. [Id. at PageID 570].

Michael thereafter pleaded guilty to the Indictment pursuant to a Plea Agreement. [R. 32: PA, PageID 244-55]. The Plea Agreement permitted Michael to raise the suppression issue on appeal. [Id. at PageID 250]. The district court sentenced Michael on July 21, 2025, to 151 months of imprisonment and 15 years of supervised release. [R. 39: JE, PageID 535-536].

Michael now appeals.

17

Case: 25-3552    Document: 16    Filed: 11/12/2025    Page: 23

## SUMMARY OF ARGUMENT

The United States Supreme Court held in *Florida v. Jimeno*, 500 U.S. 248 (1991), a defendant's claim that law enforcement exceeded the scope of a Fourth Amendment waiver is subject to a "reasonable person" standard. Following *Jimeno*, this Court held under facts similar to this case that law enforcement exceeded the scope of a defendant's waiver to search his phone based on the entirety of their conversation. *United States v. Lewis*, 81 F.4th 640 (6th Cir. 2023). The district court here abused its discretion when it found under these precedents that Michael James waived all Fourth Amendment rights to the search of his phone when his conversations with law enforcement were limited to his conduct on a Whisper application.

Michael James reasonably understood that when law enforcement entered his home to question him, he was not free to walk away or end the interrogation. Law enforcement should have informed Mr. James of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Their failure to provide these warnings was a violation of his Fifth Amendment rights. The district court abused its discretion when it found there was no violation.

18

## ARGUMENT

**I.    The district court abused its discretion when it denied Michael James's Motion to Suppress.**

### A.    Standard of Review

In reviewing a district court's decision on a motion to suppress, the Court reviews factual findings for clear error and the application of the law to those findings de novo. *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citing *United States v. Garcia*, 496 F.3d 495, 502 (6th Cir.2007)). The Court must view the evidence in a light that most supports the district court's decision. *Id.* (quoting *Garcia*, 496 F.3d at 502) (further citations omitted).

As this Court has observed, video and audio recordings change this equation. Whereas without recordings a reviewing court would "leave untouched a district court's assessment of the evidence," a recording enables a reviewing court "to assess for [itself] both the factual and legal questions." *Feagin v. Mansfield Police Dept.*, 155 F.4th 595, 600 (6th Cir. 2025), *see also United States v. Sittenfeld*, 128 F.4th 752, 802 (6th Cir. 2025) (Bush, J., dissenting) (finding that, when video or audio recordings exist, a reviewing "court does not need a witness to know what was said.") (citing *Scott v. Harris*, 550 U.S. 372 (2007)) This Court therefore must review whether the district court's findings were erroneous based not only on the evidentiary hearing testimony, but on the audio recording that supported it.

19

**B.**   **Michael James's Fourth Amendment waiver was restricted to a search of the Whisper application on his cellular phone.**

The principal United States Supreme Court case adjudicating the scope of a defendant's knowing, voluntary and intelligent waiver is *Florida v. Jimeno*, 500 U.S. 248 (1991). Observing that consent and a defendant's scope of consent is an exception to the warrant requirement, the *Jimeno* Court held that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251.

More recently, the Sixth Circuit reviewed a scope of consent waiver under *Jimeno* in *United States v. Lewis*, 81 F.4th 640 (6th Cir. 2023). There, like here, a defendant was confronted with child pornography charges after law enforcement conducted an interview with him in his home. Although the parties agreed that the defendant permitted officers to conduct a cursory search of his phone and laptop, the district court found that officers exceeded the scope of the consent when they searched all electronic devices in the home and did a thorough forensic examination of the phone and laptop.

This Court agreed with the district court's conclusion. It determined that based on the conversations law enforcement had with the defendant, a reasonable person would not have believed that the defendant had consented to the search of all electronic devices in his home. More pertinent here, the *Lewis* Court held that

20

officers exceeded the scope of the defendant's consent to search his phone and laptop when they conducted a full forensic search of his phone. It determined that the defendant's reasonable understanding of that search was limited to a "search [of] his devices while [law enforcement officers and the defendant] were present in [the defendant's] home." *Id.* The *Lewis* Court found the consent ended once law enforcement arrested the defendant and left to obtain a search warrant.

The district court here found that, during the interrogation there was discussion about other apps aside from the Whisper app. The district court observed Agent Johnston stated the "Whisper app et cetera" during the discussion surrounding the search. While the district court acknowledged that Michael asked, "for clarification that it's only related to this [investigation]," the district court nonetheless found that Michael consented to the search of his entire phone, including the subsequent forensic search. The court found most noteworthy Agent Johnston's question, "If we go through your phone, is there anything else we should know about ahead of time?" as dispositive that Michael consented to the search of the entire phone. She further observed that Agent Johnston "mentions" other apps, and that Michael did not "retract permission to use the phone or to search the phone." [R. 46: Suppression Hrg. Tr., PageID 568]. The court also found the consent form stated that the phone itself was to be searched and that Michael signed the form which

21

stated in boilerplate that he understood he had the right to refuse permission of the search. [Id. at PageID 569].

The district court's findings are undercut when reviewing the entire audio recording. The district court deemed as "critical" consent evidence Michael's lack of response to Agent Johnston's question, "If we go through your phone, is there anything else we should know about ahead of time?" [R. 46: Suppression Hrg. Tr., PageID 568]. But that finding omits other important portions of the interrogation. Agent Johnston had asked that question twice before and Michael had responded emphatically that Whisper was the only app where these conversations occurred. Specifically, Agent Johnston questioned Michael:

> Q: So, if I am on your phone, is there any other app location that you used besides Whisper that you, um, engaged in the same conversations and/or anything else of that manner?
>
> A: No, Whisper is the only app that I have.
>
> Q: So, if I go through there [the phone] I wouldn't find anything else?
>
> A: The only app that you have is Whisper.
>
> Q: Say that again?
>
> A: The only app that I have that I talk to is Whisper. I have Snapchat but it's only normal people that I talk to, you can check my Snapchat, okay?

22

Q: No. That's fine.

[James Interrogation Audio Rec., App. A, Min. 10:58 to 11:32]. It is at this point that Michael offers to delete Whisper. Agent Johnston then responds, "I think that would solve a lot of the problems." [Id. at Min. 11:37].

This conversation in no way informed Michael that the scope of the search would exceed the Whisper app. In fact, a reasonable person would presume quite the opposite. Because Agent Johnston agreed that search was "only related to this [investigation]," and Michael made clear that Whisper was the only app on which he had conversations with minors, it was reasonable for Michael to believe that the scope of the search was confined to Whisper. Michael even offers for Agent Johnston to review his conversations on Snapchat, although he states they were with only "normal people," but Agent Johnston responds, "No, that's fine."

The district court also found noteworthy that other applications were discussed during the interrogation. But those discussions are beside the point. The mere mention of other apps during the interrogation does not mean Michael or a reasonable person would understand that it would expand the scope of the "conversation investigation." As an example, the district court observes that agents ask Michael about Telegram as evidence that he understands the scope of the search. [R. 46: Suppression Hrg. Tr., PageID 568]. But when asked about his use of Telegram, Michael responds, "I've had it before to message friends on gaming

23

cites." He then observes, "I barely use Telegram." [James Interrogation Audio Rec., App. A, Min. 16:10]. Michael could not have understood from this question or any question about another app which he assured officers did not contain evidence of the "conversation investigation" that he was consenting to law enforcement's search of those other apps. The fact that other apps are mentioned, and Micheal explains his innocuous use of them, does not inform him that law enforcement will search his entire phone, particularly when, as the district court found, Michael asked "for clarification that it's only related to this [investigation], and he is told that it is." [R. 46: Suppression Hrg. Tr., PageID 567].

Finally, the district court found that the consent form contained language informing Michael that the search of his phone was all-encompassing. But Michael had no previous experience with law enforcement or the criminal justice system. When officers asked if he had previous legal troubles, he responded, "No, not at all, which is why I'm so [] nervous." [James Interrogation Audio Rec., App. A, Min. 13:18].

Furthermore, Agent Johnston summarized the form as he presents it to Michael, stating that it says Michael: (1) has the right to refuse the search; (2) is giving his permission voluntarily, and (3) that "you authorize us to get into what we determine is the conversation investigation." [Id. at Min. 12:49-13:01]. Michael then clarifies that the search is a limited one, "So, only related to this investigation?" [Id.

24

at Min. 13:02], and as the district court found, he is told that it is. Rather than reading the entire form, Michael did what most reasonable people do when presented with boilerplate forms, he permitted Agent Johnston to summarize the contents of it for him. Based on Agent Johnston's verbal summary of what the form stated, and Michael's clarification that the search would extend only to the "conversation investigation," which he already had confirmed was confined to the Whisper application, a reasonable person would rely on Agent Johnston's representations and what they all had understood about the limitations of Michael's conversations. Based on the entire interrogation, a reasonable person in Michael's position would understand that the scope of the investigation was limited to the Whisper app, where the "conversations" occurred. The district court abused its discretion when it found otherwise.

    **C.**    **Agent Johnston and Officer Jarvis conducted a custodial interrogation of Michael James in his home, requiring them to provide Michael with the warnings under *Miranda v. Arizona*.**

The threshold question in determining whether Agent Johnston and Officer Jarvis should have provided Michael with *Miranda* warnings when they interrogated him is whether he was in custody at that time. Because he did not believe he was free to exit the interrogation, their failure to provide him with his *Miranda* rights was a violation of his Fifth Amendment right against being "a witness against himself." U.S. CONST. amend. V.

25

To ensure a suspect's Fifth Amendment protection, the government may not use statements, whether exculpatory or inculpatory, obtained during a custodial interrogation, unless it properly utilizes procedural safeguards to guarantee the accused has been informed of, and freely waives, their constitutional privileges to remain silent. *Miranda*, 384 U.S. at 444-45. A custodial interrogation occurs when a person has been taken into custody or is otherwise deprived of his freedom of action in any significant way, and a law enforcement officer questions that person. *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).

In determining whether a person is in custody during an interrogation, the Supreme Court sets forth two essential questions: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Several factors guide this inquiry, including: (1) the location of the interview; (2) the length and manner of questioning; (3) whether the individual possessed unrestrained freedom of movement during the interview; and (4) whether the individual was told he need not answer the questions. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). No one factor is "dispositive of the custody issue." *Stansbury v. California*, 511 U.S. 318, 325 (1994).

Although an interrogation in a defendant's residence may not be considered custodial, courts have held there are exceptions to this generalization. "The number of officers, the show of authority, the conspicuous display of drawn weapons, the nature of the questioning all may transform one's castle into an interrogation cell—turning an inherently comfortable and familiar environment into one that a reasonable person would perceive as unduly hostile, coercive and freedom-restraining." *United States v. Panak*, 552 F.3d at 466 (citing *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008)); *see also United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010).

Based on this law, the district court erred when it held Michael was not in custody during the interrogation with law enforcement, requiring them to provide him with *Miranda* warnings. To support its decision, the district court judge noted that Michael "sounds confident" on the audio recording when he is speaking with his mother and that his "instruct[ion]" to the officers on how to speak with his mother was evidence that Michael was comfortable in these circumstances. [R. 46: Suppression Hrg. Tr., PageID 560-61]. The district court gleaned from the sound of Michael's voice that "he does not sound intimidated." [Id.]

The audio recording undercuts this finding. Michael is heard crying throughout the recording. Agents also try to calm Michael, telling him to "take a deep breath," and acknowledging, "I know you're a little nervous." [James

27

Interrogation Audio Rec., App. A, Min. 2:42]. To further assuage Michael's fears, Officer Johnston states, "if we weren't here just to have a conversation with you, we would have come in a different manner, if you know what I mean." [Id. at Min. 3:05].

Even Agent Johnston's evidentiary hearing testimony undercuts the district court's finding of "confidence." He testified that Michael was "nervous" and "crying" [R. 28: MTS Evidentiary Hrg. Tr., PageID 561-62]. The agent's continual need to reassure Michael that he would not "get into trouble" if he did what they told him was an indicator that Michael was not "confident" as the district court described him.

The district court also dismissed signs of Michael's impaired mental health, finding that Michael was not suffering from any mental condition that would prevent him from understanding the interview or provide his consent to search the phone. [R. 46: Suppression Hrg. Tr., PageID 566]. But finding Michael did not suffer from a mental condition preventing him from understanding the interrogation is much different than determining it did not in any way impact his reasoning regarding his ability to believe he "was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112. The district court should have considered this fact when taking into account Micheal's belief about his freedom to move or terminate the interview.

28

The district court further found the interrogation was non-custodial because Agent Johnston told Michael he would not be going to jail. That finding is undercut, however, by the audio recording and Agent Johnston's cross-examination testimony at the hearing. First, on the audio recording Michael's parents continuously tried to reach him, but he only answers the phone after Agent Johnston tells him to "answer your mom." [James Interrogation Audio Rec., App. A, Min. 4:32]. It is obvious from that interchange that Michael did not feel free to move around his house as he pleases and believes he must wait for permission to answer the phone in his own home. He therefore did not believe he had "unrestrained freedom of movement" during the interrogation. *Panak*, 552 F.3d at 465.

Moreover, as defense counsel made clear while questioning Agent Johnston at the evidentiary hearing, Michael's freedom from arrest was conditional. Agent Johnston admitted to defense counsel that he left Michael with the impression that, if he deleted the Whisper app and was "honest" with the officers, then things would resolve more favorably for Michael and, if he was not, then something less favorable would happen. [R. 28: MTS Evidentiary Hrg. Tr., PageID 185]. Agent Johnston affirmed during his testimony that he responded to Michael's comment, "I don't want to be in trouble," by stating, "I'm trying to make it so you're not in trouble." [Id at PageID 195]. Agent Johnston's qualified response about Michael's potential arrest did not demonstrate that he was free to move around or exit the interview. In

29

fact, the contrary was true--Michael reasonably understood that if he was not cooperative, he would face legal repercussions. Because of the condition that Agent Johnston placed on Michael ability to remain at liberty, Michael could not have believed he could walk away from the interrogation without legal consequences. The district court's finding to the contrary was an abuse of its discretion.

## CONCLUSION

For the foregoing reasons, Mr. James requests this Court VACATE the district court's denial of his Motion to Suppress and REMAND the case to the district court.

Respectfully submitted,

*/s/ Lori B. Riga*
LORI B. RIGA
Ohio Bar: 0066994
Office of the Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
Phone: (216) 522-4856
Fax: (216) 522-4321
lori_riga@fd.org

Attorney for Michael James

30

## CERTIFICATE OF SERVICE AND CONFORMITY

1. I certify that on November 12, 2025, a copy of Appellant Michael James's Opening Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

2. This brief complies with the 13,000 type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as this brief contains 6,585 words in proportionally spaced font, Times New Roman, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ Lori B. Riga*
LORI B. RIGA

Attorney for Michael James

31

## <u>DESIGNATION OF DISTRICT COURT DOCUMENTS</u>

Under Sixth Circuit Rules 28(b)(1)(A) and 30(g)(1), Appellant Michael James

designates the following relevant district court documents:

| Record # | Description | Page ID# |
|---|---|---|
| 9 | Indictment | 22 – 23 |
| 18 | Motion to Suppress | 100 – 108 |
| 20 | Notice of Manual Filing, Ex A (audio) | 117 |
| 24 | Government Response in Opposition | 129 – 137 |
| 25 | Reply to Response | 138 – 141 |
| 28 | Motion to Suppress Evidentiary Hearing Transcript | 154 – 231 |
| 29 | Government's Post-Hearing Brief | 232 – 236 |
| 30 | Defense Post Hearing Brief | 237 – 242 |
| 32 | Plea Agreement | 244 – 255 |
| 39 | Judgment | 534 – 544 |
| 41 | Notice of Appeal | 550 |
| 46 | Suppression Hearing Transcript | 555 – 573 |
| 47 | Change of Plea Hearing | 574 – 600 |
| 48 | Sentencing Hearing | 601 – 642 |
|  |  |  |
| App. A | James Interrogation Audio Recording Manually Filed at R. 20, Page ID #117 |  |

32